UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HUBERT THOMPSON, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | 3:15-CV-01742-VLB |
| | : | |
| JAMES C. ROVELLA, ET AL. | : | February 14, 2017 |
| Defendant. | : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. 23]

### INTRODUCTION

On October 2, 1998, Plaintiff Hubert Thompson ("Thompson" or "Plaintiff") was wrongfully convicted of kidnapping, sexual assault, and attempt to commit sexual assault, and he served four years and three months in prison for these wrongful convictions. Thompson now sues the City of Hartford, Chief of Police for the City of Hartford James C. Rovella, Sergeant Liam Pesce, Officer Tuyen Bergenholtz, Officer Anthony Kozieradzki, Officers in the Crimes Against Persons ("CAPERS") Unit, and Evidence Officers, for damages of $4.5 million dollars caused by incidents related to his arrest, prosecution, and incarceration. Thompson asserts four counts of civil rights violations under 42 U.S.C. § 1983, one count of intentional infliction of emotional distress ("IIED"), one count of negligent infliction of emotional distress ("NIED"), and one negligence claim. Presently before the Court is Defendants' Motion to Dismiss, filed pursuant to Fed. R. Civ. P.

1

12(b)(6) for failure to timely file suit.[1]  For the following reasons, the Court GRANTS the Motion to Dismiss.

## BACKGROUND

I.   Facts

On the evening of September 23, 1994, a 34 year old woman was kidnapped and raped in Hartford, Connecticut. [*See* Dkt. 1 (Complaint), ¶¶ 22-30].  Shortly after the incident, the woman was taken to the emergency room and the hospital performed an examination, which included the use of a rape kit. [*See id.*, ¶ 38].  The state laboratory tested the rape kit after receiving it from the Hartford Police Department ("HPD") on October 13, 1994, and the results came back negative. [*Id.* ¶¶ 38-39].  Five months after the incident on February 23, 2005, the woman examined eight photographs and positively identified Thompson as the perpetrator. [*Id.* ¶ 34].  Thompson was charged in state court and pleaded not guilty to one count of kidnapping in the first degree, one count of sexual assault in the first degree, and one count of attempt to commit sexual assault in the first degree.

---

[1] Defense counsel did not enter an appearance or file the Motion to Dismiss on behalf of the unnamed CAPERS Officers and Evidence Officers.  Discovery comes to a close on February 1, 2017, and these Defendants remain unnamed.  The Court *sua sponte* extends this Motion to unnamed Defendants because all alleged unlawful conduct pertaining to these Defendants occurred within the time period between September 23, 1994, and July 19, 2012.  Therefore, the statute of limitations defense is apt for the unnamed individuals as well.

[*See id.* ¶ 20].

Trial commenced on October 1, 1998, and lasted one day. [*Id.* ¶¶ 20, 44]. The jury delivered a guilty verdict on October 2, 1998. [*Id.* ¶ 44]. On November 20, 1998, Thompson was sentenced to twelve years of incarceration, which he did not begin to serve until December 12, 2007, on account of his incarceration relating to a ten year federal sentence. [*Id.* ¶¶ 45-47].

Between the time when the incident occurred and the start of Thompson's sentence, substantial improvements were been made to DNA testing. [*Id.* ¶ 48]. Notably, in 2006 an incarcerated individual named James Tillman was exonerated and released from prison due to DNA testing performed in 2005 and 2006, which excluded Tillman from being the perpetrator. [*Id.* ¶¶ 53-55]. On March 10, 2008, Thompson filed an appeal to challenge his conviction. [*Id.* ¶ 57]. The Connecticut Supreme Court denied his petition for certiorari on January 19, 2010, and Thompson subsequently filed a Petition for a Writ of Habeas Corpus. [*Id.* ¶¶ 58-59].

Thompson's counsel for the habeas petition, William T. Koch, visited the HPD on January 4, 2011, and he learned the rape kit had been stored with "old evidence" in a trailer behind the headquarters. [*See id.* ¶¶ 60-62]. Koch filed a Petition for DNA Testing with the Superior Court in Hartford and upon reanalysis of the rape kit, it was determined that the DNA matched a known felon who lived near the woman and the man had a similar build, complexion, and facial features as Thompson. [*Id.* ¶ 65]. Thompson was released from prison on March 12, 2012,

a new trial was ordered, and all charges were dismissed against him on July 19, 2012.  [*Id.* ¶¶ 66-67].

On August 3, 2012, Thompson filed a claim against the State of Connecticut for wrongful incarceration with the Office of the Claim Commissioner, and he received compensation in 2014 pursuant to Conn. Gen. Stat. § 54-102uu.  [*Id.* ¶¶ 68, 70].  With respect to the claim before the Office of the Claim Commissioner, the Office of Attorney General provided notice to Thompson on January 2, 2014, that indicated Connecticut would not contest his innocence.  [*Id.* ¶ 69].

II. Positions of the Parties

Plaintiff's claims are against members of the City of Hartford's Police Department.  His four § 1983 are generally based on the City of Hartford's failure to adequately identify, maintain, and process an effective DNA testing system.  The two emotional distress claims are related to Defendants' conduct leading to and during Plaintiff's arrest, detention and incarceration.  The negligence claim is related to the officers' duty and failure to disclose exculpatory evidence.

Defendants move to dismiss this case in its entirety on the basis that all claims are time-barred by the applicable statute of limitations.  Specifically, Defendants argue (1) there is a three year statute of limitations for all 42 U.S.C. § 1983 claims for which the cause of action arose on July 19, 2012, when Defendant was exonerated, that ran on July 19, 2015; (2) there is a two year statute of limitations for both Negligent Infliction of Emotional Distress and Negligence of

4

**Municipal Employees for which the cause of action arose on March 12, 2012, when Defendant was released from prison, that ran on March 12, 2014; and (3) there is a three year Intentional Infliction of Emotional Distress statute of limitations for which the cause of action arose on March 12, 2012, when Defendant was released from prison, that ran on March 12, 2015.  [*See* Dkt. 24 (Def. Mot. Dismiss)].  Given that the statute of limitations would have run for Defendants' posited cause of action dates, Defendants request that the Court dismiss the case in its entirety.**

**Plaintiff broadly argues that the Motion to Dismiss should be denied because the dates in question are disputed, and as such the dismissal is inappropriate at this stage.  [*See* Dkt. 29-1 (Pl.'s Sur-Reply Brief), at 1-2].  With respect to the § 1983 claims, Plaintiff disputes Defendants' proffered cause of action date and instead posits that it was January 2, 2014, when the Attorney General notified Plaintiff that his innocence would not be contested, when the cause of action arose.  [*See* Dkt. 27 (Pl.'s Opp'n Mot. Dismiss), at 5].  Alternatively, Plaintiff contends that equitable tolling should apply to this case.  [Dkt. 29-1, at 3].**

### DISCUSSION

I. <u>Legal Standard</u>

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

5

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks and citations). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated

6

by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

II. <u>Affirmative Defense: Statute of Limitations</u>

A statute of limitations defense is typically raised in a responsive pleading, but "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see Velez v. City of New London*, 903 F. Supp. 286, 289 (D. Conn. 1995) ("Although the statute of limitations defense is usually raised in a responsive pleading, the defense may be raised in a motion to dismiss if the running of the statute is apparent from the face of the complaint."); *Maye v. Durkin*, No. 3:10cv194(VLB), 2012 WL 2521101, at *4 (D. Conn. June 28, 2012) (ruling on a statute of limitations affirmative defense in a § 1983 case because the dates in question were undisputed). "Even where a federal court borrows a state statute of limitations, [f]ederal law governs the question of when a federal claim accrues." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotation marks omitted). A cause of action accrues once the plaintiff "knows or has reason to know of the injury that is the basis of the action." *Id.*; *see Doe v. Mastoloni*, No.

7

3:14-CV-00718 (CSH), slip op. at 5 (D. Conn. Feb. 12, 2016) ("Under the discovery rule, accrual is delayed until the plaintiff has discovered his cause of action.") (internal quotation marks omitted).

Resolution of the statute of limitations dispute turns on a question of law rather than a question of fact. The parties do not dispute any dates referenced in the complaint. Rather, they dispute which dates constitute the correct "cause of action" for the various claims. Therefore, the Court finds it is appropriate to address the statute of limitations question on this motion to dismiss. *See Ghartey*, 869 F.2d at 162-63 (addressing the parties' dispute as to whether the cause of action arose on the date of the arbitration award or the final day of the arbitration hearing).

### A. *42 U.S.C. § 1983 Claims*

Federal courts look to state law to determine the appropriate statute of limitations in a § 1983 claim, and it is well-settled that Connecticut's three year personal injury statute of limitations applies to § 1983 claims originating in Connecticut. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (applying Conn. Gen. Stat. § 52-577 to a § 1983 claim); *Castillo v. Hogan*, No. 3:14cv1166(VAB), slip op. at 3 (D. Conn. Feb. 22, 2016) (same).

#### 1. *Malicious Prosecution*

The parties have briefed the issue of whether Plaintiff's § 1983 claims for malicious prosecution are time-barred. A malicious prosecution cause of action "does not accrue until the criminal proceedings have terminated in the plaintiff's

favor. . . ." *Heck v. Humphrey*, 512 U.S. 477, 489 (1994); *DiBlasio v. City of New York*, 102 F.3d 654, 657-58 (2d Cir. 1996) (opining that it is unlikely the Supreme Court intended *Heck* to link the accrual date to the grant of a writ of habeas corpus). By like measure, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489-90. The Supreme Court later built upon *Heck*, stating that "the *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has *not* been . . . invalidated, that is to say, an outstanding criminal judgment." *Wallace v. Kato*, 549 U.S. 384, 393 (2007) (defining in a false arrest claim "the date on which the statute of limitations beg[ins] to run [as] the date petitioner bec[omes] held pursuant to legal process"); see *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) ("[W]here the viability of the plaintiff's claim depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct.").[2]

After ordering a new trial, the Superior Court dismissed all charges against Plaintiff on July 19, 2012. [Dkt. 1, ¶ 67]. It is true that the Attorney General's letter notified Thompson that the State would not challenge his innocence in the civil

---

[2] The Court does not find Plaintiff's reliance on a single Third Circuit case law, *United States v. Gadsen*, 332 F.3d 224 (3d Cir. 2003) to be persuasive, as there is ample Second Circuit case law speaking directly to this issue and *Gadsen* dealt with a parallel case pending before the South Carolina Supreme Court.

proceeding before the Claims Commissioner. However, the Chief State's Attorney has prosecutorial authority over criminal matters in Connecticut, not the Attorney General, and thus the Attorney General's letter related only to the civil and not the criminal proceeding. *See* Conn. Gen. Stat. §§ 3-125 (conferring powers over civil proceedings to Attorney General), 51-277 (conferring powers over criminal proceedings to Chief State's Attorney). The Plaintiff had an immediate right to file a malicious prosecution claim upon dismissal of the criminal charges by the Superior Court. *See Heck*, 512 U.S. at 489-90 (holding a malicious prosecution claim is valid when the case is terminated in the plaintiff's favor); *Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 318 (D. Conn. 2009) ("In Connecticut, 'termination in favor of the plaintiff' has been interpreted as termination without consideration.") (citing *DeLaurentis v. City of New Haven*, 220 Conn. 225, 251 (1991)); *Lopes v. Farmer*, 286 Conn. 384, 390 (2008) ("[T]he prosecution against the plaintiff terminated in his favor when the charges were dismissed. . . .").[3] A person need not wait to see if the prosecutorial authority will choose to file new charges before filing a malicious prosecution claim after he was exonerated. *DeLaurentis*, 220 Conn. at 251 ("[W]e have never required a plaintiff in a vexatious suit action to

---

[3] The Court refers to state law for reference as "[c]laims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, as 'substantively the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).

10

prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination indicated his innocence or nonliability, so long as the proceeding has terminated without consideration.").

Plaintiff had a viable cause of action under § 1983; however, Plaintiff "kn[ew] or ha[d] reason to know" of the injury that is the basis of the action prior to this letter when his case was dismissed and he no longer had an "outstanding criminal judgment." *See M.D.*, 334 F.3d at 221; *Wallace*, 549 U.S. at 393; *see also* Conn. Gen. Stat. § 54-102uu (requiring a person's conviction to be "vacated or reversed" to prevail under the statute). Therefore, a § 1983 malicious prosecution claim brought after July 19, 2015, is time-barred absent equitable tolling.

### 2. *False Arrest*

Count Four of the complaint alleges that "Thompson was maliciously and without probable cause arrested," [Dkt. 1, ¶ 91], and to the extent that Plaintiff asserts a false arrest claim, the Court now addresses it as such.[4] "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on malicious prosecution claim and the wrongful use of judicial process rather than detention itself." *Wallace*, 549 U.S. at 390 (quoting

---

[4] The parties have not briefed a false arrest claim.

11

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, 888 (5th ed. 1984)).  A false arrest or false imprisonment claim under § 1983 "where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."  *Id.* at 397; *Turner v. Boyle*, 116 F. Supp. 3d 58, 84 (D. Conn. 2015) (same).  This claim is clearly time-barred as Plaintiff was arrested and proceedings began against him at some point after his identification on February 23, 1995, but before his trial on October 1, 1998.  [Dkt. 1, ¶¶ 34-35, 38].

### 3. *Deliberate Indifference*

Plaintiff asserts that certain Defendants were "deliberately indifferent" to the existence of potentially exculpatory evidence.  A supervisory defendant who is personally involved may be held personally liable if evidence shows "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."  *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995).[5]  It is not clear whether Plaintiff is

---

[5] The Court notes that the "deliberate indifference" language is misplaced as to non-supervisory Defendants.  Plaintiff does not appear to be asserting any facts that would lead the Court to recognize a viable "deliberate indifference" claim as to non-supervisory Defendants and furthermore Plaintiff did not reference "deliberate indifference" in any briefing on the Motion to Dismiss.  *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) (applying "deliberate indifference" of prison guards or prison doctors to a Plaintiff's serious medical need); *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994) (addressing a prison official's "deliberate indifference" to a substantial risk of serious harm).

asserting municipal liability under § 1983 against the City of Hartford for failing to train municipal employees, "where the failure to train amounts to deliberate indifference to the rights of members of the public with whom the employees will interact," *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006), or "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983," *Villante v. Dep't of Corr. of City of New York*, 786 F.2d 516, 519 (2d Cir. 1986), as Plaintiff does not reference the City of Hartford in any count in the complaint.

Regardless of the lack of clarity, any "deliberate indifference" allegation is time-barred, because Plaintiff came to know of the injury certainly by the time all charges were dropped against him, if not earlier when he was released from prison.

### B. *Emotional Distress Claims*

Plaintiff does not address the statute of limitations for intentional infliction for emotional distress. Connecticut state law imposes a three year statute of limitations for intentional infliction of emotional distress and a two year statute of limitations for negligent infliction of emotional distress. *See* Conn. Gen. Stat. §§ 52-577, 52-584.

"The Connecticut Supreme Court has clarified that in cases of intentional infliction of emotional distress, if no offending conduct has occurred within the three-year limitations period set forth in § 52-577, the plaintiff will be barred from recovering for the prior actions of intentional infliction of emotional distress." *Alston v. Daniels*, No. 3:15-cv-669 (CSH), 2015 WL 7257896, at *10 (D. Conn. Nov.

13

17, 2015) (internal quotation marks omitted); *c.f. Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016) ("Under New York law, the statute of limitations on an IIED claim involving a continuous injury does not begin to run until the conduct ceases."). The conduct causing emotional distress—the fact that Plaintiff was wrongfully incarcerated—ended on March 12, 2012, when he was released from prison. Plaintiff's IIED claim must be dismissed absent equitable tolling because the statute of limitations period for IIED ran on March 12, 2015. As the NIED statute of limitation is shorter, this claim is also time-barred.

### C. *Negligence Claim*

Like the NIED claim, a negligence claim under Conn. Gen. Stat. § 52-557n is governed by a two year statute of limitations. *See Tagliaferi v. Town of Hamden*, No. 3:10 CV 1759(JGM), 2014 WL 129223, at *9 (D. Conn. Jan. 14, 2014) (imposing the two-year statute of limitations under § 52-584 regarding negligence of a municipality under § 52-557n); *Spears v. Garcia*, 263 Conn. 22, 24 (2003) (holding that a negligence claim may be brought against a municipality under Conn. Gen. Stat. § 52-557n); *Brusby v. Metro. Dist.*, 160 Conn. App. 638 (Conn. App. Ct. 2015) (applying Conn. Gen. Stat. § 52-584 to a negligence claim under § 52-557n). For the same reasons as above, Plaintiff's negligence claim is time-barred absent equitable tolling.

### III. Equitable Tolling

Federal courts typically "refer[ ] to state law for tolling rules," just like they do for statute of limitations rules. *Wallace*, 549 U.S. at 394; *see Abbas v. Dixon*, 480

F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would defeat the goals of section 1983") (internal quotation marks omitted). Under Connecticut law, tolling is appropriate "for a continuing course of conduct or fraudulent concealment of the cause of action by the defendants." *Harnage v. Dzurenda*, No. 3:14-cv-885 (SRU), 2014 WL 3360342, at *4 (D. Conn. July 9, 2014) (citing *Macellaio v. Newington Police Dep't*, 145 Conn. App. 426, 430 (Conn. App. Ct. 2013)).

In addition, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace*, 549 U.S. at 394. A plaintiff must show "'extraordinary circumstances prevented a party from timely performing a required act,' and 'the party acted with reasonable diligence throughout the period' to be tolled." *Mitchell v. Kugler*, No. 07 CV 1801 (JG)(LB), 2009 WL 160798, at *6 (E.D.N.Y. Jan. 23, 2009) (quoting *Walker*, 430 F.3d at 642).

Here, Plaintiff has not alleged that statutory or equitable tolling should apply. Instead, Plaintiff alleges that "the exculpatory information was wrongfully withheld from the Plaintiff in violation of said duties through the pendency of all the Plaintiff's appeals and the court should consider this withholding of evidence as an extraordinary act which stood in the Plaintiff's way to preventing the Plaintiff from filing timely." [Dkt. 27, at 6]. This claim is unavailing as the statute of limitations did not begin to run while information was being withheld. Rather,

15

Plaintiff was exonerated and the statute of limitations began to run after this information was withheld.

Moreover, the record shows that on August 3, 2012, the Plaintiff knew he had a civil cause of action against the State of Connecticut arising out of his prosecution as evidenced by the fact that he filed a claim for compensation for a civil wrong with the Claims Commissioner on that date. The State of Connecticut is immune from suit under the Eleventh Amendment to the United States Constitution unless it waives that immunity. *Kentucky v. Graham*, 473 U.S. 159 (1985) ("[A]bent waiver by the State or a valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."); *Turner*, 116 F. Supp. 3d at 73 (finding the court lacked subject matter jurisdiction "[b]ecause Connecticut has not waived its sovereign immunity with respect to claims brought under sections 1983 or 1985. . . ."). The State of Connecticut's process for determining whether to waive immunity is to allow individuals to bring claims for civil damages before the Claims Commissioner. *See* Conn. Gen. Stat. § 4-142. The Plaintiff was prosecuted by the State on the basis of the criminal charge lodged by and the investigation conducted by members of the City of Hartford Police Department. Plaintiff fails to explain how he could have known that he had a civil cause of action against the State of Connecticut but did not know that he had a civil cause of action against the City of Hartford or its police officers. Given that Plaintiff, by and through counsel, filed a claim for compensation on August 3, 2012, the Court finds that Plaintiff could have also currently filed the instant case at that time. The complaint

16

**fails to plead facts indicating an extraordinary circumstance prevented Plaintiff from timely filing this case, as he was capable of filing another case within the requisite statute of limitations period. The Court recognizes the grave injustice suffered by the Plaintiff; however, two wrongs do not make a right and the injustice does not justify equitable tolling of a statute of limitations. The Court holds that equitable tolling is not applicable in this limited circumstance.**

## CONCLUSION

For the aforementioned reasons, Plaintiff's complaint is DISMISSED because all claims are time-barred under the requisite statute of limitations. The Clerk's Office is directed to close this case.

IT IS SO ORDERED.

                                                      /s/

                                    Vanessa L. Bryant
                                    United States District Judge

**Order dated in Hartford, Connecticut on February 14, 2017.**